IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

PETER FOWLER,                          )
                                       )
          Plaintiff,                   )
                                       )
vs.                                    )     Case No. 20-cv-856-DWD
                                       )
LUCAS BOHNERT, JOSEPH                  )
CHILDERS, DANIEL DEWEESE, NICK         )
PUCKETT, and ANTHONY WILLS,            )
                                       )
          Defendants.

## MEMORANDUM & ORDER

**DUGAN, District Judge:**

Pending before the Court is Defendants' motion for summary judgment (Doc. 104). Plaintiff Peter Fowler opposes the motion (Doc. 107).[1] In his response, Plaintiff Fowler also contends that he is entitled to summary judgment as to his claim against Defendants Nick Puckett and Anthony Wills. For the reasons delineated below, the Court **GRANTS** Defendants' motion for summary judgment and **DENIES** Plaintiff Fowler's cross-motion for summary judgment.

## I.      BACKGROUND

Fowler, an inmate in the custody of the Illinois Department of Corrections, filed a *pro se* lawsuit pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights (Doc. 1). Fowler alleged that officials at Lawrence Correctional Center ("Lawrence") and

---

[1] Defendants have filed a reply brief (Doc. 109). Plaintiff has filed two supplements (Docs 108 and 116) and a sur-reply (Doc. 110). Also pending is Defendants' motion to strike Plaintiff's sur-reply (Doc. 111). The motion to strike Plaintiff's sur-reply is granted. Plaintiff's sur-reply will be stricken as inappropriately filed under the Local Rules. *See* SDIL Local Rule 7.1(c).

officials at Menard Correctional Center ("Menard") violated his rights by refusing to place him in protective custody and keeping him in a dangerous situation. Fowler subsequently filed an Amended Complaint (Doc. 35).

The Amended Complaint directs allegations against Lucas Bohnert, Joseph Childers, Daniel Deweese, and Nick Puckett.[2] Fowler alleges that while he was incarcerated Lawrence, he was housed with a dangerous cellmate (Juan Martinez) who bullied and assaulted him. Fowler alleges that Defendants Deweese and Puckett conspired to ensure that the placement office denied his requests for a new cell assignment or institutional transfer.

After fighting with Martinez, Fowler was transferred to Menard. Believing his former cellmate, Martinez, wanted him killed, Fowler requested protective custody. Fowler spoke with Defendants Bohnert and Childers, internal affairs officers at Menard, regarding his request for protective custody, but his request was denied.

Following the Court's threshold review of the Amended Complaint, Fowler was permitted to proceed on the following claims:

**Count 1:**     First Amendment retaliation claim against Defendants Deweese and Puckett for subjecting Plaintiff to a dangerous cellmate in retaliation for Plaintiff filing lawsuits against staff and officers at Lawrence Correctional Center; and

**Count 2:**     Eighth Amendment claim against Defendants Bohnert and Childers for failing to protect Plaintiff from danger by refusing him protective custody despite the risk he faces by remaining in general population housing.

---

[2] Anthony Wills, Menard's Warden, has been added to the docket, in his official capacity only, for the purpose of carrying out any injunctive relief that might be ordered (Doc. 10).

## II.     UNDISPUTED FACTS

### A.  Failure to Refute Defendants' Factual Assertions

In the Scheduling Order (Doc. 65), Fowler was warned that the failure to respond to a motion for summary judgment may result in an order granting the motion. Additionally, Defendants provided Fowler with a Rule 56 Notice (Doc. 105), warning him that failure to respond to arguments raised in Defendants' motion for summary judgment may result in the Court granting the motion (Doc. 105, "[i]f you do not respond to the Motion for Summary Judgment with affidavits or other documentary evidence, the Court may grant judgment on one or more of your claims").

Although Fowler filed a response to the motion for summary judgment, the response, attached exhibits, and supplemental pleadings do not refute any of Defendants' factual assertions, arguments, or exhibits. In his response, Fowler merely speculates that DeWeese and Puckett may have been aware of previous lawsuits Fowler filed in the Court of Claims that did not name them but might have named other staff members as parties (Doc. 107). Fowler does not present any facts, affidavits, declarations, or arguments that could be used to contradict any other argument presented in the pending motion for summary judgment. Accordingly, the Court finds that Defendants' statement of material facts are undisputed.

### B.  Undisputed Material Facts[3]

---

[3] The following facts are taken from the record and presented in the light most favorable to Fowler, and all reasonable inferences are drawn in his favor. *See Ricci v. DeStafano*, 557 U.S. 586 (2009).

3

Fowler was incarcerated in the Illinois Department of Corrections at Lawrence from November 4, 2016 until February 11, 2020. After fighting with his cellmate, Fowler was transferred to Menard on February 11, 2020.

While incarcerated at Lawrence, Fowler was housed with Juan Martinez, a member of the Latin Kings. Fowler was fearful of Martinez and made requests for a new housing assignment. Despite these requests, Martinez remained Fowler's cellmate until the two had an altercation. After the altercation, Fowler was transferred to Menard.

Fowler suspects that Defendants Puckett and Deweese influenced his housing assignment as retaliation for his prior lawsuits and grievances. Defendants Puckett and Deweese, however, were not assigned to the placement office at Lawrence. Only staff members assigned to the placement office at Lawrence have the duty and the ability to assign a person in custody to a cell. An individual in the placement office told Fowler she could not change his housing assignment because he had made certain people angry. However, this individual did not identify Defendants Puckett or Deweese. Further, Fowler was never told that Defendants Puckett or Deweese told anyone in the placement office to assign anyone as Fowler's cellmate. When Fowler complained to Defendant Deweese, Deweese repeatedly told him to file a request slip or grievance if he was having issues with staff members.

Upon arriving at Menard, Fowler spoke with Defendant Bohnert for approximately 45 minutes. Fowler told Bohnert that his life was in danger due to a threat from Martinez and requested protective custody. That was the last time Fowler spoke to Bohnert.

4

On February 27, 2020, Fowler completed a protective custody request form. On March 4, 2020, Defendant Childers interviewed Fowler. Fowler believes the interview was prompted by his request to Defendant Bohnert. Fowler told Defendant Childers that he believed his life was being threatened by Martinez. Fowler further stated that he had not been threatened at Menard and that he was unable to provide any additional evidence that he was presently being threatened in any way. The Intel Department did not recommend granting Fowler's protective custody request, and on March 6, 2020, Menard's Chief Administrative Officer denied the request.

## III.   SUMMARY JUDGMENT STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a). Once the moving party has met its burden, "the burden shifts to the non-moving party to come forward with specific facts showing that there is a genuine issue for trial." *Spierer v. Rossman*, 798 F.3d 502, 507 (7th Cir. 2015). A disputed fact is material if it might affect the outcome of the suit under the governing law. *Williams v. Brooks*, 809 F.3d 936, 941–42 (7th Cir. 2016). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page*, 906 F.3d 606, 609–10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Valenti v. Lawson*, 889 F.3d 427, 429 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on

summary judgment because those tasks are left to the factfinder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014).

## IV.    ANALYSIS

### A. Retaliation – Defendants Puckett and Deweese (Lawrence)

Fowler contends that Puckett and Deweese intentionally housed him with a dangerous cellmate in retaliation for lawsuits he filed against correctional employees. Defendants contend that they are entitled to summary judgment because Fowler has failed to present evidence establishing that they were aware of Fowler's previously filed lawsuits, that they were personally involved in selecting Fowler's cellmates, or that there was a causal link between Fowler's first amendment activity and their alleged misconduct.

In responding to the motion for summary judgment, Fowler also contends that he is entitled to summary judgment as to this claim. However, Fowler's "cross-motion for summary judgment" is nothing more than a bare bones assertion that he has presented sufficient evidence to prevail on his retaliation claim. This is not enough to support summary judgment. Accordingly, the Court will deny Fowler's motion. Defendants' motion for summary judgment is addressed in more detail below.

To establish a prima facie case of retaliation, an inmate must produce evidence that (1) he engaged in constitutionally protected speech, (2) he suffered a deprivation likely to deter protected speech; and (3) his protected speech was a motivating factor in the defendants' actions. *Kidwell v. Eisenhauer, 679 F.3d 957, 965 (7th Cir.2012)* (clarifying allocation of evidentiary burdens at summary judgment in light of *Gross v. FBL Fin. Servs.,*

*Inc.,* 557 U.S. 167, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009)); *Greene v. Doruff,* 660 F.3d 975, 977 (7th Cir.2011) (same). He must also present evidence that each Defendant was personally involved in the alleged constitutional deprivation. *Wojcik v. Cook Cty.,* 803 F. App'x 25, 27 (7th Cir. 2020) ("Only someone personally responsible in a constitutional violation can be held liable under [42 U.S.C.] § 1983."); *Wilson v. Warren Cty., Ill.,* 830 F.3d 464, 469 (7th Cir. 2016) (same). If the inmate satisfies the above elements, the burden shifts to the defendants to rebut the causal inference with evidence showing that they would have taken the same action even without any retaliatory motive. *See Kidwell,* 679 F.3d at 965; *Greene,* 660 F.3d at 979.

Defendants contend that, although Fowler has an extensive history of filing lawsuits, there is no evidence that Defendants Deweese or Puckett had knowledge of that history. In his response, Fowler contends that he previously filed lawsuits against Lawrence staff in the Illinois Court of Claims and that he is permitted to establish, via circumstantial evidence, that Defendants were aware of those lawsuits. While this is true, Fowler does not identify any evidence, circumstantial or otherwise, from which a jury could conclude that Defendants had knowledge of those lawsuits. Fowler's testimony, however, does indicate that he had a history of filing grievances at Lawrence, and that Deweese and Puckett may have been aware of those grievances.

For purposes of this motion, the Court will assume that the record contains sufficient evidence for a jury to conclude that Defendants Deweese and Puckett had

knowledge of Fowler's First Amendment activities.[4] Nonetheless, Defendants Deweese and Puckett are entitled to summary judgment because there is no evidence that they were personally involved in assigning Fowler's cellmate. Absent personal involvement, Defendants Deweese and Puckett cannot be held liable under § 1983. Moreover, absent personal involvement, Fowler cannot establish a causal link between his protected speech and the alleged retaliatory action.

In his deposition, Fowler testified that when he spoke with an individual in the placement office about his cellmate, she indicated that her "hands [were] tied" because Fowler had "pissed certain people off." Fowler believes the employee was referring to Defendants Deweese and Puckett because Deweese "smirked" when Fowler complained about his cell assignment, and because he observed his cellmate, Martinez, being friendly with Deweese, Puckett, and other correctional officers. But this is nothing more than speculation, and Fowler admits that the placement office employee never said anything suggesting that the individuals he had "pissed off" were Defendants Deweese or Puckett.[5]

---

[4] Fowler's First Amendment claim pertains to his history of filing *lawsuits* against correctional staff. In his deposition, however, Fowler claimed that he filed or attempted to file numerous grievances about the correctional staff at Lawrence, including Puckett and Deweese. For purposes of this motion, the Court assumes that Puckett and Deweese had knowledge of Fowler's First Amendment activities – both his history of filing lawsuits and grievances against staff at Lawrence.

[5] Defendants have also submitted an affidavit from the placement office employee Fowler says he spoke to. According to her affidavit, only placement office employees have the authority to assign incarcerated individuals to a cell, and correctional staff not assigned to the placement office are not able to assign persons in custody to cells. She also states that she is not aware of Defendant Puckett ever attempting to ensure any person in custody was assigned to a specific cell or assigned a specific cellmate. The affidavit, however, is silent as to Defendant Deweese, instead referring to Defendant Childers who is not named in connection with Count One. The record further indicates that Defendants Deweese and Puckett were not working in the placement office during the relevant time period.

Summary judgment "is the put up or shut up moment in a lawsuit…" *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008). That is to say, at this juncture Fowler is required to provide some evidence that Defendants Deweese and Puckett were personally involved in the alleged retaliatory act. As explained above, he has not met this burden. Instead, Fowler provides only his subjective belief that Defendants Deweese and Puckett somehow influenced his cell assignment. Such speculation is insufficient to defeat summary judgment. *Herzog v. Graphic Packaging Int'l, Inc.*, 742 F.3d 802, 806 (7th Cir. 2014). Without more, Fowler has not created a genuine issue of disputed fact, which dooms his retaliation claim. Because there is no evidence that Deweese or Puckett participated in, or were involved with, Fowler's housing assignment, they are entitled to judgment as a matter of law on Count One.

### B. Failure to Protect – Defendants Bohnert and Childers (Menard)

The Eighth Amendment imposes a duty on prison officials "to take reasonable measures to guarantee the safety of inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "[P]rison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Id.* at 833. "[I]n order to state a section 1983 claim against prison officials for failure to protect, [a plaintiff] must establish: (1) that he was incarcerated under conditions posing a substantial risk of serious harm and (2) that the defendants acted with deliberate indifference to his health or safety." *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010) (quotation marks omitted). Deliberate indifference is "something

9

approaching a total unconcern for a prisoner's welfare in the face of serious risks," or a "conscious, culpable refusal" to prevent harm. *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992). To prevail, the plaintiff must establish that the defendant "had actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Santiago*, 599 F.3d at 756.

In the context of failure to protect cases, the Seventh Circuit has equated "substantial risk" to "risks so great that they are almost certain to materialize if nothing is done." *Brown v. Budz*, 398 F.3d 904, 911 (7th Cir. 2005). In such cases, "a prisoner normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety." *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996). "[T]he fact that an inmate sought and was denied protective custody is not dispositive of the fact that prison officials were therefore deliberately indifferent to his safety." *Lewis v. Richards*, 107 F.3d 549, 553 (7th Cir. 1997). Moreover, "[e]xercising poor judgment … falls short of meeting the standard of consciously disregarding a known risk to his safety." *Id.* at 554. "[T]he mere failure of the prison official to choose the best course of action does not amount to a constitutional violation." *Peate v. McCann*, 294 F.3d 879, 882 (7th Cir. 2002).

The record indicates that, upon being transferred to Menard, Fowler spoke to Defendant Bohnert for approximately 45 minutes. Bohnert told Fowler he would investigate his claims, and Fowler testified that he assumes Bohnert investigated his claims as promised. On February 27, 2020, Fowler completed a protective custody

10

request. (Doc. 104-4). In his request, he stated, "My life is threaten[ed] by notorious Latin King Leader." Defendant Childers interviewed Fowler on March 4, 2020. During the interview, Fowler asked Childers about his protective custody request. Childers told Fowler he would "do all he can to try to help [Fowler]." (Doc. 115, pp. 67-68). Both Childers and Bonhert told Fowler if he needed anything in the interim, to send them a kite.

When Childers met with Fowler on March 4, 2020, Fowler said that his former cellmate, Martinez, "would always put his hands on [Fowler] and threaten [Fowler]." (Doc. 104-4). He indicated that Martinez held a leadership position in the Latin Kings. He also said that the Latin Kings attempted to attack him in 1987 and that the Latin Kings were "after him" because he shot a Latin King in the 1980s. Fowler, however, "could not provide a current rationale as to why the incident from 30+ years ago [was] relevant to his immediate safety and security besides his current issue/statement of Martinez holding a leadership position with the [Latin Kings] and Fowler assaulting him." (Doc. 104-4). Further, Fowler was "unable to provide any evidence that he was threatened in any way." (Doc. 104-4). Fowler also told his counselor that his life was in jeopardy because he "got into it with a Latin King" and that individual had "people everywhere." (Doc. 104-4). Fowler, however, admitted he had not been threatened since arriving at Menard. (Doc. 104-4). At the completion of the investigation, the Intel Department voted to deny Fowler's protective custody request "due to lack of evidence to substantiate his claims that his life [was] in danger." (Doc. N104-4). The Warden accepted the Intel

Department's recommendation, denying Fowler's request for protective custody on March 6, 2020. (Doc. 104-4).

To date, Fowler has not been assaulted by Martinez (who is now housed at Menard) or other members of the Latin Kings. The correctional officers at Menard have told Fowler that he "is straight," and, according to Fowler, "[s]o far they're right." (Doc. 115, p. 72). Fowler further testified that, although he is not in protective custody, he is housed by himself and he is currently "sectioned off," so he is "okay." (Doc. 115, p. 71).

Defendants Bohnert and Childers argue summary judgment is warranted in their favor because there is no evidence that Fowler suffered any adverse action due to their conduct and because they were not deliberately indifferent to Fowler's safety. In responding to the summary judgment motion, Fowler does not refute this argument. In fact, he does not address his claim against Defendants Bohnert and Childers at all. Further, during his deposition, Fowler stated that he had "no problem" with Bohnert or Childers, and that "they never did nothing to [him]." (Doc. 115, pp. 63-64).[6] Given the record before the Court, and Fowler's failure to respond to Defendants' argument as to this claim, the Court finds that there is no evidence that Bohnert or Childers were deliberately indifferent to a specific, impending, and substantial threat to his safety

---

[6] Fowler did testify that he believes Bohnert violated his constitutional rights because he denied his request for protective custody. (Doc. 115, p. 17). This, however, is not enough to survive summary judgment. *Lewis v. Richards, 107 F.3d 549, 553 (7th Cir. 1997)*. "[T]he fact that an inmate sought and was denied protective custody is not dispositive of the fact that prison officials were therefore deliberately indifferent to his safety."

Accordingly, summary judgment is warranted in favor of Defendants Bohnert and Childers.[7]

## V.   DISPOSITION

For the foregoing reasons, the motion for summary judgment filed by Defendants Lucas Bohnert, Joseph Childers, Daniel Deweese, and Nick Puckett (Doc. 104) is **GRANTED**. The cross-motion for summary judgment filed by Plaintiff Peter Fowler (Doc. 107) is **DENIED**. Defendants' motion to strike Plaintiff Peter Fowler's sur-reply (Doc. 111) is **GRANTED**. Plaintiff's sur-reply (Doc. 110) is **STRICKEN**.

The Clerk of the Court is directed to enter judgment in Defendants' favor and against Plaintiff. All deadlines and settings on the Court's calendar are vacated.

**SO ORDERED.**

Dated: August 17, 2023

DAVID W. DUGAN
United States District Judge

---

[7] Defendants also argue that they are entitled to qualified immunity as to Counts One and Two. The Court need not address the qualified immunity issue because it concludes that Defendants are entitled to summary judgment as to both claims.